(No. 4512–)

Dale Riggins, Claimant, vs. State of Illinois, Respondent.

*Opinion filed April 24, 1953.*

Hershey and Bliss, Attorneys for Claimant.

Latham Castle, Attorney General; C. Arthur Nebel, Assistant Attorney General, for Respondent.

Tolson, C. J.

Dale Riggins filed his complaint on April 29, 1952 seeking to recover for damages sustained by him in an accident on July 6, 1951, while driving his motorcycle on State Route No. 66, north of the City of Litchfield, Illinois.

The record consists of a verified complaint, original transcript of evidence, copy of transcript of evidence, abstract of evidence, waiver of brief of claimant, and request for oral argument, which request was later withdrawn. No answer was filed by respondent. Therefore, in accordance with Rule 11 of this Court, a general traverse is considered to have been filed.

On July 6, 1951, claimant was 23 years of age, and was employed by the Illinois Central Railroad Company as a freight agent at Macon, Illinois. On July 6, 1951, he, accompanied by Eldon Huber, was riding a motorcycle in a southerly direction on State Route No.

66, north of the City of Litchfield, Illinois, at a point where old highway No. 66 and new highway No. 66 cross the C. B. & Q. Railroad. As they came from the north, they turned off of new highway No. 66, since the overpass was being constructed over the railroad at that point, and proceeded in a southerly direction on the old highway. After they passed over the overpass on the old highway, and proceeded in a southerly direction, they turned off on a spur road leading to the right. Since the spur was not connected with the new highway, they ran off of the pavement, and had the accident in question. As a result of the accident, plaintiff's left foot was badly mangled, and he was taken to the hospital in Litchfield, Illinois, where he remained for one month and one day. He was afterwards taken to the Illinois Central Hospital in Chicago, and remained there until October 30, 1951. His left foot was amputated on October 17, 1951. His expenses at the Litchfield Hospital, and medical services amounted to $642.00. He was off work for a period of eleven months until June 6, 1952, and his earnings were $325.00 per month.

The crux of this case is whether or not certain warning signs or barricades were in place at the fork in the road, so that the travelling public would not turn to the right, and enter upon a dead end road. The answer to this question will determine whether respondent was guilty of negligence, as charged in the complaint, or whether claimant was guilty of contributory negligence by not heeding the warning signs.

In behalf of the petitioner, six witnesses testified as to the facts and circumstances of the case, and may be summarized as follows:

Claimant, Riggins, testified that he and a companion, Huber, were riding on his motorcycle to

Litchfield, Illinois, on July 6, 1951, about 10:00 P.M. He stated the machine was in good working order, was equipped with standard lights, and that he was unfamiliar with the road. He further stated that after passing over the overhead he came to a Y in the road, that he took the right hand spur, and continued to drive upon an apparently good paved road for approximately 170 feet at about 30 - 35 miles per hour, until the road abruptly ended. Both he and Huber were thrown from the motorcycle. He positively declared there were no barricades or warning signs at the fork of the road to warn him of the dangerous condition.

Eldon Huber, claimant's companion, corroborated Riggins' testimony as to speed, lights, and condition of the road, and stated positively there were no warning signs or barricades at the Y in the road.

Charles T. Riggins, father of claimant; Lela Riggins, mother of claimant; and, Charles F. Riggins, brother of claimant, testified that on July 7, 1951, the day after the accident, they went to the scene, and there were no warning signs or barricades.

Charles T. Riggins further testified that he returned to the scene of the accident on July 12, 1951, and at that time a sign was in place at the fork of the road, and that it bore the inscription "July, 1951", but no date, and that he took two pictures of the sign, which were introduced into evidence as claimant's exhibits Nos. 4 and 5. He denied that the sign was so in place on July 7, 1951, when he first visited the scene.

Harold Lehnert, a mechanic from Litchfield, and a stranger to the Riggins family, testified that he drove a wrecker to the scene of the accident about 12:00 P.M. on July 6, 1951, and removed the motorcycle. He stated that he backed the wrecker down the spur

to the end of the pavement, and used a cable to drag in the motorcycle. He unequivocally stated that there were no warning signs or barricades in place on the night of July 6, 1951.

Three witnesses testified in behalf of respondent, and their testimony may be summarized as follows:

Edward Hoolihan stated that he was employed by the State Highway Department as a maintenance man, that the scene of the accident was part of his territory, and that he travelled his territory once a day to inspect and maintain the road. With reference to the existence or non-existence of the "dead end sign", heretofore referred to, he elaborated on the usual practices of the Highway Department to first barricade the road, do the work, and thereafter put up the "dead end sign". He stated that he did not erect signs or barricades, but thereafter maintained them. He testified that he went to the scene of the accident on July 7, 1951 with his immediate supervisor, Thomas Telfer. He stated he did not know when the sign was put up, but concluded that the "sign, the barricade or something" was there on July 6, 1951.

Thomas Telfer, supervisor in the maintenance division, testified that he went to the scene with Edward Hoolihan on July 7, 1951, and that a "dead end sign" and a barricade 16 feet long was in place across the pavement, and that it would not have been possible for Harold Lehnert to back his wrecker off the end of the spur. He further testified that a Mr. Crawley of the Highway Department erected the sign.

L. R. Bailey, a field engineer for the State, identified certain plats, and stated that the barricade was in place in March of 1952, but had no knowledge of its existence on July 6, 1951.

In evaluating this conflicting testimony, the Court is impressed with the testimony of Mr. Lehnert, who was a total stranger. It is also significant that, since questions of the existence or non-existence of the "dead end sign" was so important in this case, Mr. Crawley, who erected the sign at *some time,* was not called as a witness to testify *when* the work was performed.

The law is well settled that the State is not an insurer of the travelling public on its highways, and when unexpected hazards occur, which could not have reasonably been foreseen, no recovery is allowable, though injury occur.

However, when the State is in the process of repairing, or, as in this case, removing a highway, it is duty bound to use reasonable care in warning the travelling public of the hazard, which it has voluntarily created.

The Court, therefore, finds from the evidence that the respondent was negligent in failing to erect warning signs, barricades, or other devices on the dead end road involved in this case.

The Court further finds that claimant has established by a preponderance of the evidence that he was free from contributory negligence.

The final point to be decided by this Court is the amount of the award, and in this regard it is to be noted that claimant is seeking $7,500.00.

Respondent has not by its pleading, or otherwise, raised the question of allowable award; hence, the Court must examine the statute in force at such time.

Claimant's petition alleges he was injured on July 6, 1951. On July 16, 1951, House Bill No. 900 was approved by the Governor, and reads as follows:

"Jurisdiction. 8. The Court shall have jurisdiction to hear and determine the following matters:

C. All claims against the State for damages in cases sounding in tort, in respect of which claims the claimants would be entitled to redress against the State of Illinois, at law or in chancery, if the State were suable, and all claims sounding in tort against The Board of Trustees of the University of Illinois; provided, that an award for damages in a case sounding in tort shall not exceed the sum of $7,500.00 to or for the benefit of any claimant. The defense that the State or The Board of Trustees of the University of Illinois is not liable for the negligence of its officers, agents, and employees in the course of their employment shall not be applicable to the hearing and determination of such claims."

The statute in force prior to such amendment (July 17, 1945) is substantially the same with this important difference—"the award shall not exceed the sum of $2,500.00".

In construing Section 8 C, this Court has previously held in the case of *Gertrude Skaggs* vs. *State of Illinois*, No. 4519, and *Shockley* vs. *State of Illinois*, No. 4387, that the date of the injury, and not the date of the award, would determine the amount of the award, and that any cause of action accruing subsequent to July 16, 1951 would be governed by the amended act.

It, therefore, necessarily follows that claimant is limited by the law in force on July 6, 1951.

An award is, therefore, made to Dale Riggins in the sum of Two Thousand Five Hundred Dollars ($2,500.00).